UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FREDERICK E. LEONARD,

    Plaintiff,

v.

M. THOMPSON, et al.,

    Defendants.

No. 2:16-cv-2767 DB P

ORDER

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges an Eighth Amendment claim of failure to protect and a claim that his due process rights were violated in a disciplinary hearing. All parties have consented to magistrate judge jurisdiction. (ECF Nos. 5, 40.) Presently before the court are defendant's motions for summary judgment (ECF Nos. 41, 42), plaintiff's cross motion for summary judgment and response to defendants' motions for summary judgment (ECF No. 46), and defendants' responses to plaintiff's motion (ECF Nos. 47, 48). For the reasons set forth below, the court will grant both the defendants' motions for summary judgment and deny plaintiff's cross-motion for summary judgment.

## BACKGROUND

### I. Procedural History

Plaintiff initiated this action by filing the complaint on November 16, 2016. (ECF No. 1.) The court screened and dismissed plaintiff's original complaint for failure to state a cognizable

federal law claim. (ECF No. 12.) Upon screening the First Amended Complaint the court found plaintiff stated a claim against defendant Thompson for failure to protect under the Eighth Amendment and against defendant Clemente for a due process violation during plaintiff's disciplinary proceeding. (ECF No. 16.) Plaintiff's claims against defendant Metzger were dismissed.

Following the close of discovery defendants Thompson and Clemente each filed a motion for summary judgment. (ECF Nos. 41, 42.) Plaintiff filed a cross-motion for summary judgment and response to defendants' motions. (ECF No. 46.) Defendants objected to plaintiff's cross motion as untimely, but also filed responses to his motion. (ECF Nos. 47, 48.)

**II.     Allegations in the Complaint**

The events giving rise to the claim in this action occurred while plaintiff was an inmate at the Stanton Correctional Facility ("Jail") in Fairfield. (ECF No. 15 at 1.) Plaintiff alleges that on July 12, 2016, he was housed in the Administrative Separation ("Ad Sep") area of the Jail. (Id. at 2.) Plaintiff alleges that Ad Sep houses inmates who are dangerous, mentally ill, or need protection. He also claims deputies were aware that no two cell doors should be open at one time because Ad Sep inmates were not permitted to have contact with each other. Inmate Butler previously threatened plaintiff and defendant Thompson was aware of Butler's conduct. On July 12, Thompson failed to ensure that Butler was secure in his cell before opening plaintiff's cell door. After Thompson left his station, Butler followed plaintiff and a fight ensued.

Plaintiff claims the day after the fight, he filed a grievance complaining that he should not be held responsible for the altercation because it was due to the "illegal unlock" by defendant Thompson. (Id. at 4.) He was interviewed by Deputy Clemente and Sergeant Ramirez regarding his grievance. Ramirez found he was not guilty of instigating the altercation. However, two days later Clemente conducted a formal hearing. Clemente did not interview any witnesses, denied plaintiff's request to present witness statements, and found him guilty based only on Clemente's viewing of part of the video of the altercation. As a result of the guilty finding, plaintiff incurred ten days in-cell confinement. Plaintiff seeks monetary damages.

////

# DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

## I. Thompson's Motion for Summary Judgment

Thompson argues he is entitled to summary judgment because plaintiff cannot claim prison officials violated his rights under the Eighth Amendment where he initiated the attack on a fellow inmate. (ECF No. 42-1 at 8-10.) Thompson claims the video shows that plaintiff initiated the attack when there was no threat of immediate danger.

## II. Clemente's Motion for Summary Judgment

Clemente argues he is entitled to summary judgment because plaintiff failed to exhaust administrative remedies as to his due process claim and he did not violate plaintiff's due process rights during the disciplinary hearing process. (ECF No. 41-1 at 7-9.)

## III. Plaintiff's Cross-Motion for Summary Judgment and Response

Plaintiff argues that defendant Thompson acted with deliberate indifference to his safety. He states that the risk of harm was obvious because Ad Sep houses dangerous, mentally ill inmates who have a history of assaulting other inmates. (ECF No. 46 at 22.) He further states Thompson acted deliberately indifferent because he failed to use available surveillance tools to assure that inmate Butler was locked in his cell before he released plaintiff. (ECF No. 46 at 22.)

Plaintiff claims Clemente violated his right to due process because he refused to call plaintiff's requested witnesses during the disciplinary hearing and found plaintiff guilty of a disciplinary violation based solely on the video evidence. (ECF No. 46 at 9-11.)

## IV. Summary Judgment Standards under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or

other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

4

truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. at 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record is taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On a motion for summary judgment, it is inappropriate for the court to weigh evidence or resolve competing inferences. "In ruling on a motion for summary judgment, the court must leave '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' to the jury." Foster v. Metropolitan Life Ins. Co., 243 Fed.Appx. 208, 210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

V.     **Material Facts**

    **A. Undisputed Facts**

At all relevant times plaintiff was an inmate at the Stanton Correctional Facility housed in the Ad Sep unit. (DSUF (ECF No. 41-2) ¶ 1; ECF No. 46 at 57 ¶ 1.) Defendant Thompson was a unit task officer in the Ad Sep unit at all relevant times. (DSUF (ECF No. 42-2) ¶ 3; ECF No. 46 at 57 ¶ 2.) Ad Sep inmates are single celled. (DSUF (ECF No. 42-2) ¶ 4; ECF No. 46 at 57 ¶ 6.) Ad Sep inmates are released from their cells one at a time for 15 to 30 minutes per day. (Id.) The cell doors in Ad Sep can be opened remotely by using a personal data assistant (PDA), which

////

indicates whether a cell door is open or closed. (DSUF (ECF No. 42-2) ¶ 6; ECF No. 46 at 57 ¶ 6.)

On July 12, 2016, at the conclusion of inmate Butler's unlock time, Thompson ordered Butler to return to his cell and lock down. (DSUF (ECF No. 42-2) ¶ 10; ECF No. 46 at 58 ¶ 11.) Thompson checked his PDA. (DSUF (ECF No. 42-2) ¶ 12.) The PDA indicated that Butler's cell door was shut and locked. (DSUF (ECF No. 42-2) ¶ 12; ECF No. 46 at 57 ¶ 6.) Thompson assumed Butler was secure in his cell. (DSUF (ECF No. 42-2) ¶ 12; ECF No. 46 at 57 ¶ 5.) Thompson then used his PDA to unlock plaintiff from his cell. (DSUF (ECF No. 42-2) ¶ 13; ECF No. 46 at 58 ¶ 13.) After unlocking plaintiff, Thompson left the area. (DSUF (ECF No. 42-2) ¶ 14; ECF No. 46 at 16 ¶ 10.)

Prior to the July 12, 2016 incident, Butler had shouted racist comments and general threats against Black inmates. (DSUF (ECF No. 42-2) ¶ 24; ECF No. 46 at 15, ¶ 7.) Thompson had heard Butler make such statements. (DSUF (ECF No. 42-2) ¶ 25; ECF No. 46 at 16 ¶ 13.)

At some point while they were both unlocked, plaintiff approached Butler and hit him several times with a closed fist. (ECF No. 43, 44.) Butler does not strike plaintiff or otherwise fight back. (DSUF (ECF No. 41-2) ¶ 31; ECF No. 46 at 69 ¶ 31.) After the altercation, Thompson noticed Butler was still out of his cell and ordered him to return to his cell. (DSUF (ECF No. 42-2) ¶ 15-16; ECF No. 46 at 58 ¶ 16, 19.) Thompson used the video monitoring system to ensure Butler entered his cell and shut the door. (DSUF (ECF No. 42-2) ¶ 16; ECF No. 46 at 59 ¶ 16.)

On July 15, 2016, Clemente conducted a disciplinary hearing regarding a report of mutual combat involving plaintiff and Butler that occurred on July 12, 2016. (DSUF (ECF No. 41-2) ¶ 4; ECF No. 46 at 64 ¶ 4.) Clemente interviewed plaintiff. (DSUF (ECF No. 41-2) ¶ 7; ECF No. 46 at 64 ¶ 7.) Clemente also reviewed a video recorded by a camera on the cell block that captured inmate movements before and after the incident. (DSUF (ECF No. 41-2) ¶ 9; ECF No. 46 at 64 ¶ 9.) Clemente found plaintiff guilty of a rule violation for fighting based on his review of the video evidence of the incident. (DSUF (ECF No. 41-2) ¶ 30; ECF No. 46 at 69 ¶ 30.)

////

There is a grievance system at Stanton Correctional Facility. (DSUF (ECF No. 41-2) ¶ 43; ECF No. 46 at 72 ¶ 43.) Plaintiff submitted a grievance (#16000893) regarding Thompson's alleged failure to protect. (DSUF (ECF No. 41-2) ¶ 44; ECF No. 46 at 44-52.) Plaintiff did not submit a separate grievance complaining about the alleged denial of due process in connection with the disciplinary hearing conducted by Clemente. (DSUF (ECF No. 41-2) ¶ 44; ECF No. 46 at 72 ¶ 44.)

### B. Disputed Facts

While plaintiff states that he disputes a number of the facts outlined below, he does not consistently point to specific evidence to show that a dispute actually exists. Additionally, nearly all of what plaintiff disputes relates to the characterization of certain actions by defendants rather than what actually occurred. For example, Thompson alleges he mistakenly unlocked plaintiff's cell while Butler remained out of his cell, but plaintiff argues that Thompson recklessly and carelessly failed to make sure Butler was locked up before allowing plaintiff out. (DSUF (ECF No. 42-2) ¶ 5; ECF No. 46 at 57.)

Plaintiff alleged that he witnessed Thompson unlock more than one person at a time on three or four occasions prior to July 12, 2016. (ECF No. 46 at 48.) Thompson cannot recall any other occasion on which he allowed more than one inmate out at a time. (DSUF (ECF No. 42-2) ¶ 9.)

Plaintiff claims he was a pretrial detainee awaiting trial at the time of the incident. (ECF No. 46 at 20.) However, defendants allege that plaintiff was a convicted inmate housed in the Solano County Jail. (ECF No. 47-1 at 1; ECF No. 47-3 at 5.) Though as set forth below, plaintiff's status is not material. The court also notes that there are additional disputes regarding immaterial facts.

## DISCUSSION

### I. Legal Standards – Failure to Protect

"Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause, or if not yet convicted, under the Fourteenth Amendment's Due Process Clause." Castro v. County of Los Angeles, 833 F.3d

7

1060, 1067-68 (9th Cir. 2016) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). In order to prevail under either clause, "plaintiff must show that the prison officials acted with 'deliberate indifference.'" Castro, 833 F.3d at 1068.

The Eighth Amendment requires that prison officials take reasonable measures for the safety of prisoners. Farmer v. Brennan, 511 U.S. 825, 832 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Id. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005); Hoptowit v. Ray, 682 F.2d 1237, 1250 (9th Cir. 1982) overruled on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 837; Hearns, 413 F.3d at 1040.

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prisoner official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842 (citations omitted). The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well-being of the prisoner. Id. at 832-33; Frost v. Agnos, 152 F.3d 1124, 1128-29 (9th Cir. 1998). Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff must show that the defendant acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis, and citations omitted).

In Castro v. County of Los Angeles, the Ninth Circuit announced a new, objective "deliberate indifference" standard for analyzing a pretrial detainee's "failure to protect" claim, which no longer required proof of an officer's subjective awareness of the risk to which he was exposing the detainee. Castro, 833 F.3d 1060, 1070-71 (9th Cir. 2016).

> [T]he elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer are:
>
> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

8

>  (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
>  (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
>  (4) By not taking such measures, the defendant caused the plaintiff's injuries.

Castro, 833 F.3d at 1071.

## II. Analysis

At the outset the court notes that although plaintiff claims he was a pretrial detainee at the time of the incident, plaintiff characterized his claim against Thompson as arising under the Eighth Amendment and has cited Eighth Amendment cases in his briefing. However, the court need not determine plaintiff's status, because under either standard, plaintiff's failure to protect claim against defendant Thompson fails.

"In a § 1983 action, the plaintiff must . . . demonstrate that the defendant's conduct was the actionable cause of the claimed injury . . . . To meet this causation requirement the plaintiff must establish both causation-in-fact and proximate causation." Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008) (citations omitted). This means that plaintiff's injury would not have occurred but for Thompson's conduct (actual causation) and no unforeseeable intervening cause occurred that would supersede Thompson's liability (proximate causation). Conn v. City of Reno, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), vacated by 131 S. Ct. 1812 (2011), reinstated in relevant part by 658 F.3d 897 (9th Cir. 2011)).

The video evidence presented by defendants shows that plaintiff approached Butler and struck him repeatedly with his fist and that Butler did not fight back. (ECF Nos. 43, 44.) Plaintiff has not argued that he was attacked or challenged the video evidence put forth by defendants. Rather plaintiff states he "engaged" Butler in self-defense. (ECF No. 46 at 17, 48-49.) Here, plaintiff willingly engaged in the fight with Butler, thus "his own actions were the proximate cause of any injury." See Garces v. Degadeo, No. 1:06-cv-1038 JAT, 2010 WL 796831 at *4 (E.D. Cal. Mar. 5, 2010).

9

Plaintiff claims he suffered the following injuries as a result of the altercation: a laceration on a knuckle, a "retracted" knuckle, and swelling for two weeks. (ECF No. 46 at 15.) However, Thompson cannot be found liable for injuries plaintiff incurred in the course of an assault initiated by plaintiff. See Sellers v. Steyth, No. CV 13-44 H DWM JTJ, 2015 WL 6455565 at *4 (D.Mont. Oct. 26, 2015) (holding officer not liable on failure to protect theory where plaintiff instigated the confrontation that resulted in his injuries); Indreland v. Yellowstone Cnty Bd. of Comm'rs, 693 F.Supp. 2d 1230, 1236, 1243 (D.Mont. 2010) (finding plaintiff's failure to protect claim fails as a matter of law because plaintiff initiated the fight); Hailey v. Kaiser, 201 F.3d 447 (10th Cir. 1999) (unpublished) (upholding summary judgment in favor of defendants based on a finding that defendants were not the proximate or legal cause of plaintiff's injuries because he initiated the altercation with a fellow inmate).

Plaintiff cannot establish the requisite causation to show that Thompson violated his rights. Thus, Thompson's motion for summary judgment will be granted and plaintiff's cross motion for summary judgment will be denied.

### III. Legal Standards Exhaustion

The exhaustion requirement of the PLRA applies to both pretrial detainees and convicted prisoners, who "may not file suit challenging conditions in a correctional facility unless he or she has exhausted administrative remedies at the facility." Rodriguez v. City of Los Angeles, 891 F.3d 776, 792 (9th Cir. 2018) (citing 42 U.S.C. § 1997e(a); Kingsley v. Hendrickson, 135 S. Ct. 2466, 2476 (2015)). "The PLRA strengthened the exhaustion" requirement such that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." Woodford v. Ngo, 548 U.S. 81, 85 (2006) (citation omitted). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as some remedy remains available. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer

the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis and alteration in original) (citing Booth v. Churner, 532 U.S. 731, 736 (2001)).

"Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate . . . must exhaust available remedies . . . but need not exhaust unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016) (brackets in original). In discussing availability in Ross the Supreme Court identified three circumstances in which administrative remedies were unavailable: (1) where an administrative remedy "operates as a simple dead end" in which officers are "unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) where an administration scheme is "incapable of use" because "no ordinary prisoner can discern or navigate it;" and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-60. "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Id. at 1856. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 1857.

"[F]ailure to exhaust is an affirmative defense under the PLRA." Jones v. Bock, 549 U.S. 199, 216 (2007). It is the defendant's burden "to prove that there was an available administrative remedy." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). The burden then "shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies unavailable to him." Id.

A prisoner is required to exhaust administrative remedies before filing suit. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curium). Section 1997e(a) mandates that "[n]o action shall be brought . . . until [the prisoner's] administrative remedies . . . are exhausted. 42 U.S.C. § 1997e(a). "The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained." Booth, 532 U.S. at 738. "Exhaustion subsequent to the filing of suit will not suffice." McKinney, 311 F.3d at 1199.

### IV. Analysis

Defendant Clemente alleges that plaintiff did not file a grievance related to his claim that Clemente violated his right to due process during the disciplinary hearing. (ECF No. 41-1 at 8-9.) In order to fully exhaust administrative remedies an appeal must put prison officials on notice of the claim. Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) ("A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress."). A prisoner puts officials on notice when he provides the detail required by the prison's regulation. Id. (citing Jones, 549 U.S. at 218).

Plaintiff does not allege that he filed a grievance regarding his due process claim against Clemente or that administrative remedies were not available. Instead, he argues that the grievance he filed regarding Thompson's role in unlocking plaintiff while Butler remained out of his cell satisfies the exhaustion requirement. Review of the grievance shows that it does not contain any allegations regarding defendant Clemente or the disciplinary hearing process. (ECF No. 46 at 44-52.) The grievance is insufficient to have put jail officials on notice of his claim that his due process rights were violated in connection with the disciplinary hearing.

Accordingly, summary judgment will be granted in favor of defendant Clemente because plaintiff failed to exhaust administrative remedies as to his due process claim.

### CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Defendant Clemente's motion for summary judgment (ECF No. 41) is granted.
2. Defendant Thompson's motion for summary judgment (ECF No. 42) is granted.
3. Plaintiff's cross-motion for summary judgment (ECF No. 46) is denied.

Dated: March 11, 2019

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:12
DLB:1/Orders/prisoner-civil rights/leon2767.msj

12